**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0293-19

ANNA SOUZA,

     Plaintiff-Appellant,

v.

SERGIO SOUZA,

     Defendant-Respondent.

_____

Submitted February 2, 2021 — Decided February 25, 2021

Before Judges Yannotti and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0083-15.

Anna Souza, appellant pro se.

Paul J. Giblin, Jr., attorney for respondent.

PER CURIAM

     Plaintiff Anna Souza appeals from a July 15, 2019 order, which denied her motion for relief from a dual final judgment of divorce. We affirm.

Plaintiff and defendant Sergio Souza were married for nine years and have two children; an adult daughter who now resides with a grandparent, and a teenage son who lives with plaintiff. Plaintiff filed a complaint for divorce in 2014. On August 21, 2017, one month before the divorce trial, a Family Part judge signed an order memorializing the parties' agreement to enter binding arbitration with a retired judge.

The arbitrator issued a written opinion adjudicating the equitable distribution, alimony, child support, college contribution, and counsel fee issues presented to him by the parties. Relating to the issues raised on this appeal, the arbitrator credited defendant with $32,000 representing one-half of the funds plaintiff unilaterally took from the children's 529 college savings accounts. The arbitrator denied plaintiff's claim for alimony and made the following findings:

> The [p]laintiff is [thirty-nine] years old. The [p]laintiff . . . graduated . . . [c]ollege in 2005 or 2006. She has a degree in [a]ccounting. Starting in 2007, she and her husband formed a transportation business. Both sides testified consistently that the [p]laintiff was the one in charge of all books and records for the business and the subsequent businesses that the parties owned. She did all billing, collected all monies, paid all bills, etc.
>
> The [p]laintiff has not work[ed] for the last two years. She claims that she had an accident at her place of work . . . . She was pulling out when she was struck by another car. She says her car was damaged[,] but it was still drivable[,] and she drove the car home after

A-0293-19

the accident. She was at home for the next four days and then went to the doctor to complain of back and neck pain. For this, she has received physical therapy about three or four times a week from 2014 through 2017. She has not worked during this period, claiming disability. She has not applied for nor received state or federal disability. Despite her claims, the [p]laintiff offers no proof of her inability to work for the last several years nor has she given any proof of any disability whatsoever.

The arbitrator also found plaintiff "did not offer any testimony concerning her needs[]" and presented a case information statement (CIS) budget totaling "more than both parties earn after taxes." The arbitrator concluded:

This [p]laintiff has not proven her need for alimony. She submitted a [CIS] with exaggerated expenses . . . . She's testified that she has a job earning $40,000 although she offers no proof of where she's working or the amount that she makes. She claims she does not want to disclose where she works to the [d]efendant. The court offered to have her explain just to the court, but she did not do so. Based on the absence of any proof, this court will have to assume that the [p]laintiff is able to cover her needs with her income . . . . She has failed to prove any alternate lifestyle, any need and any reasonable explanation why she does not have the ability to earn sufficient income to support herself.

The arbitrator calculated child support for the parties' son pursuant to the guidelines utilizing $40,000 and $68,800 as the income figures for plaintiff and defendant, respectively. This yielded a child support figure of $166 per week, which the arbitrator ordered defendant to pay through probation.

3

The arbitrator denied plaintiff's request to retroactively increase pendente lite support, which had been in place pursuant to a March 2015 order, finding plaintiff "was capable of working as she totally failed to prove any disability back at the time [her] supposed accident occurred, in between, or now. She simply stayed at home and failed to work." However, the arbitrator granted defendant's request to retroactively reduce the pendente lite support in accordance with the arbitrator's findings regarding the parties' incomes.

The arbitrator analyzed the Rule 5:3-5(c) factors and granted defendant counsel fees totaling $18,000 representing approximately one half of the sum of the outstanding counsel fees due to his attorney. The arbitrator denied plaintiff's request for fees finding "[n]o certification was received from any of the attorneys that had represented [p]laintiff in this matter . . . [despite that t]he court had requested several times that the [p]laintiff submit certifications of services of her attorneys, and even, explained to her what a certification of services was."

Defendant moved to confirm the arbitration award. On November 14, 2017, the court entered an order confirming the award.

Unbeknownst to the court, plaintiff had filed a separate motion to vacate the award on November 1, 2017. Her motion claimed the arbitrator "engaged in

4

misconduct by effectively refusing to hear and consider evidence pertinent and material to the controversy; engaged in misbehavior by which [plaintiff]'s rights have been prejudiced, and acted in manifest disregard of the law." A Family Part judge heard plaintiff's application on February 2 and April 6, 2018, denied it, and signed the judgment of divorce on April 6.

Plaintiff's disability hearing occurred on March 27, 2018. On June 11, 2018, the Social Security Administration (SSA) determined plaintiff disabled since July 1, 2014.

Defendant made a post-judgment application regarding college contribution and the parties' daughter also intervened seeking a contribution from the parties to her college expenses. In July 2018, the arbitrator heard the matter and shortly after testimony began, defendant and the parties' daughter resolved the amount he would contribute to her college education. As for plaintiff, the arbitrator noted as follows:

> The [p]laintiff also informed us that she was on disability, that she had been awarded disability from the [SSA]. When asked for a copy of the award letter, she indicated that she had not yet received it yet. She had some writing indicating . . . a disability, but she would only allow us to see the first and last pages. There is absolutely no reason why the [p]laintiff would not honestly represent the status of any Social Security/Disability claim to us. . . . [B]oth the [a]rbitrator and counsel for the [d]efendant, [have]

A-0293-19

never heard of a disability award being made without an award letter accompanying [it].

The arbitrator entered a judgment in favor of defendant against plaintiff for $64,000 representing the full sum plaintiff took and failed to return to the children's 529 accounts. The court confirmed the award on August 29, 2018.

On January 18, 2019, plaintiff filed a motion to vacate the judgment of divorce pursuant to Rule 4:50-1, which the motion judge noted was essentially a motion to vacate the arbitration award. Plaintiff's certification claimed: (1) she did not give the arbitrator proof of her disability because she suffered from anxiety, which constituted excusable neglect under Rule 4:50-1(a); (2) the disability determination was not rendered until after the arbitration award was confirmed and therefore constituted newly discovered evidence warranting relief from the award under Rule 4:50-1(b); and (3) the overall result of the arbitration was "unjust and unfair" requiring relief pursuant to Rule 4:50-1(f).

The motion judge denied plaintiff's motion finding the relief sought pursuant to Rule 4:50-1(a) and (b) was time barred under Rule 4:50-2 because plaintiff's motion was filed fourteen months after entry of the November 14, 2017 order confirming the arbitration award. Notwithstanding the time bar, the judge considered the merits of plaintiff's motion and concluded plaintiff was not entitled to relief pursuant to Rule 4:50-1(a) because "[p]laintiff did not attempt

6

to produce any documentation or proofs [in arbitration] as to many financial issues that were disputed in the parties' divorce." Regarding plaintiff's disability determination the judge stated:

> While the [p]laintiff did not have a determination of disability from the SSA at the time that arbitration was conducted, she could and should have provided other proof . . . any proof . . . of her disability in the form of medical records, medical testimony, her application for social security disability, letters from the social security administration, etc. She provided nothing. Again, this is not the kind of mistake that is contemplated by Rule 4:50-1 as reflected in comment 5.1.1. to the [Rule]: "The kind of mistake contemplated by the rule has been described as <u>one which the parties could not have protected themselves from during the litigation</u>[.]" (emphasis added). Plaintiff could easily have protected herself from the so-called mistake of not providing any information about her disability. She could have provided any of the documents or other evidence listed above. Contrary to her attorney's claim in the current motion, [p]laintiff was more than capable of finding and/or providing such documentation. Plaintiff has since filed two pro se motions to "Vacate Judgment and Arbitration Order/Award" (one that was denied and one that was withdrawn), and [p]laintiff managed to attach numerous exhibits to those motions, including letters from the [SSA] . . . . Plaintiff could have done the same at arbitration. Plaintiff also could have hired an attorney to represent her during the arbitration. She clearly had the funds and ability to hire counsel as she has, in fact, been represented by at least five . . . different attorneys at various points throughout this matrimonial matter[.]

A-0293-19

The motion judge found plaintiff lacked the grounds for relief pursuant to

Rule 4:50-1(b) for similar reasons stating:

> Again, [p]laintiff did not do her due diligence in attempting to prove disability. She could have attempted to prove it in a variety of ways, but made no attempt whatsoever. What's more than that, and what [p]laintiff does not address at all in her current motion papers, is that [p]laintiff was actually working at the time of arbitration. She was, by her own admission, working and earning $40,000 per year.

The judge also addressed the disability determination. He stated:

> Because a plaintiff who qualifies for social security disability benefits is presumed to be disabled under New Jersey law, Golian v. Golian, 344 N.J. Super. 337 (App. Div. 2001), the SSA's decision may constitute a substantial change in circumstances in this case, but it is not grounds for vacating the arbitration award and/or confirming order.
>
> As this was and remains a highly contentious matter, the court should also note that, even if [p]laintiff were to make an application for support based on changed circumstances, there is, of course, no guarantee that she will be successful. For one thing, subsequent decisions have more narrowly applied Golian. Gilligan v. Gilligan, 428 N.J. Super. 69 (Ch. Div. 2012), for example, . . . held that Golian does not stand for the proposition that an SSD award letter itself is automatically sufficient for the family court to conclude that a disabled party cannot work in any capacity or earn any income for support purposes; rather, when a party alleges a post-divorce disability that renders him or her unable to work, that party must provide more evidence to the court than simply the SSD

8

A-0293-19

> award letter itself to prove his or her case. Additionally, [p]laintiff would be required to produce her former and current [CIS] with any Lepis[1] applications pursuant to [Rule] 5:5-4 in order to establish that there is actually a need for support.

On appeal, plaintiff repeats the arguments she raised before the motion judge under Rule 4:50-1(a) and (b). She also argues the motion judge erred by not granting relief pursuant to Rule 4:50-1(f) because the arbitrator: failed to consider evidence she presented of her disability; did not award alimony; effectively terminated child support by awarding defendant a substantial credit against it; erred in awarding defendant the $32,000 judgment because he failed to consider the funds she removed from the children's 529 accounts were to meet pendente lite expenses; did not consider her estranged relationship with the parties' daughter and that the parties' son is young and his college plans are unknown; and failed to consider her inability to pay counsel fees on account of her disability.

"A motion under [Rule] 4:50-1 is addressed to the sound discretion of the trial court, which should be guided by equitable principles in determining whether relief should be granted or denied." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). "The decision granting or denying an

---

[1] Lepis v. Lepis, 83 N.J. 139 (1980).

application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion." Ibid.

We affirm substantially for the reasons expressed by the motion judge and add the following comments. Plaintiff's arguments pursuant to Rule 4:50-1(a) and (b) lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Plaintiff's ability to seek relief from the judgment was clearly time barred under Rule 4:50-1(a) or (b). See R. 4:50-2. Moreover, her refusal to provide evidence of her disability to the arbitrator during both arbitrations, only to attach the evidence in a motion seeking to overturn the arbitration award neither constituted excusable neglect nor newly discovered evidence to warrant relief pursuant to Rule 4:50-1(a) and (b).

The Supreme Court has stated: "No categorization can be made of the situations which would warrant redress under [Rule 4:50-1](f). . . . [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice." DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 269-70 (2009) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)) (second alteration in original).

A-0293-19

The motion judge cited <u>Gilligan</u> for the proposition that an SSA determination alone would not constitute proof of disability. However, we have since repudiated that Chancery Division decision and affirmed our holding in <u>Golian</u> that "a presumption of disability is established [by an SSA determination of disability] and the burden shifts to the opposing party to refute that presumption." <u>Gormley v. Gormley</u>, 462 N.J. Super. 433, 440 (App. Div. 2019).[2]

Regardless, there was no evidence presented of exceptional circumstances warranting relief from the judgment pursuant to <u>Rule</u> 4:50-1(f) because plaintiff refused to provide any evidence of her disability. As the motion judge noted, the SSA determination may constitute evidence of a change in circumstances, but it did not constitute grounds to set aside the arbitration award.[3] To the extent we have not addressed an argument raised by plaintiff it is because it lacks sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] <u>Gormley</u> was released after the motion judge decided the matter.

[3] We express no opinion whether plaintiff is entitled to relief going forward on account of a change in circumstances.